## CHESTER SMITH *vs.* NEW HAVEN & NORTHAMPTON RAILROAD COMPANY.

It is the duty of a railroad company which undertakes to carry live animals for hire to provide cars of sufficient strength to prevent the animals from breaking through the same; and they will be responsible for a loss occurring through their failure to do so, although the animals were unruly and vicious; but they will not be responsible for an injury to the animals occurring simply from their own viciousness or unruliness, while being carried in a proper car.

The rule of damages, in an action against a common carrier for a failure to transport live animals to market and deliver them there in good condition on a certain day, in accordance with his undertaking, is the difference between their market value there in good condition on the day when they ought to have been delivered, and their market value there in their actual condition on the day when they were delivered.

CONTRACT against common carriers to recover damages for a failure safely and seasonably to transport three fat cattle over the defendants' railroad, and forward them by other connecting railroads to New York.

At the trial in the superior court, before *Wilkinson*, J., it appeared that the defendants received of the plaintiff eight cattle at Northampton for transportation over their own and connecting roads to New York, and started them on a Saturday, in a train which reached New York the same night. Five of the cattle went through safely. When the train reached Westfield (about twenty miles from Northampton) it was found that the barriers of a door of the car were broken, and three of the cattle were missing. These cattle were forwarded, somewhat injured, by the next train, which reached New York on Monday night. The market value of cattle in New York was less on Tuesday than on Monday.

The defendants contended that they used due care, and that the injury was occasioned by the viciousness and unruliness of he cattle. There was conflicting testimony on this point. The

defendants asked the court to rule that if they were in the exer-
cise of due care, and the injury was occasioned by the unruli-
ness of the cattle injured, they would not be liable; but the
judge declined so to rule, and ruled in substance that the de-
fendants would be liable as common carriers for injuries to the
cattle while being transported by them, though occasioned by
the vicious and unruly conduct of the cattle.

The defendants asked the court to rule that if the detention
was not caused by want of due care on their part, but by the
unruliness of the cattle, they would not be liable for damage
arising from the fall in the market on Tuesday; but the judge
declined so to rule, and ruled in substance that if the defendants
were common carriers of cattle as well as of merchandise, and
the cattle were delivered by the plaintiff and received by the
defendants for transportation by the train which reached New
York on Saturday night, so as to be in readiness for the market
on Monday, that being the special cattle market, and were de-
layed in consequence of falling or breaking from the car so as
not to be ready for market in New York until Tuesday, when
they otherwise, in due course of transportation, would have
been ready for Monday's market, and were injured, the defend-
ants would be liable as common carriers for all the damage
occasioned thereby; and that the rule of damage would be the
difference between the market value of the cattle there, in good
condition, on Monday, and their market value there on Tues-
day, in the condition in which they were in consequence of the
accident.

The jury returned a verdict for the plaintiff, and the defend-
ants alleged exceptions.

*W. Allen, Jr.*, for the defendants, cited, in addition to some
of the authorities cited in the opinion, Angell on Carriers, §§ 213,
214, 214 a, 289, 294; Story on Bailments, §§ 492, 545.

*C. Delano*, for the plaintiff, cited, in addition, 2 Kent Com.
(6th ed.) 602–608; Story on Bailments, §§ 565–569, 577; *Stu-
art* v. *Crawley*, 2 Stark. R. 323; *Carr* v. *Lancashire & York-
shire Railway*, 7 Exch. 707; *Willoughby* v. *Horridge* 12 C B
742.

FOSTER, J.   In this action against a railroad company for
injuries received by cattle while being transported to market, it
appeared that, when the train arrived at Westfield, the barriers
of a car door were found to be broken down and three of the
cattle were missing.

The defendants requested the presiding judge to rule that if
the corporation used due care, and the injury was occasioned by
the unruliness of the cattle, the plaintiff could not recover.   This
instruction was properly refused.

The common law liability of a carrier for the delivery of live
animals is the same as that for the delivery of merchandise.
Upon undertaking their transportation he assumes the obliga-
tion to deliver them safely against all contingencies, except such
as would excuse the non-delivery of other property.   *Wilson* v.
*Hamilton*, 4 Ohio, (N. S.) 722.   *Palmer* v. *Grand Junction Rail-
way*, 4 M. & W. 749.   *White* v. *Winnisimmet Co.* 7 Cush. 155.

To this general rule there is an apparent exception, supported
by authority and which we adopt, that the liability of the car-
rier does not extend to injuries caused by the peculiar character
and propensities of the animals to themselves or each other.
Perhaps this qualification is in principle only an application to
live freight of the familiar rule which relieves the carrier from
responsibility where fruit perishes by natural decay, or the inhe-
rent defects of merchandise destroy its value.   Although the
carrier insures the arrival of the property at the point of des-
tination against everything but " the act of God and of public
enemies," yet the condition in which it shall arrive there must
depend on the nature of the article to be transported.   He does
not absolutely warrant live freight against the consequences of
its own vitality.   *Hall* v. *Renfro*, 3 Met. (Ky.) 51.   *Clarke* v.
*Rochester & Syracuse Railroad*, 4 Kernan, 570.

Vicious and unruly animals may injure or destroy them
selves or each .other; or frightened animals may die of terror
or starve themselves by refusing food, notwithstanding every
precaution it is possible to use.   For such occurrences the car-
rier is not answerable.   He will be relieved from responsibility
for casualties of this description, if he can show that he has

provided all suitable means of transportation and exercised tha⸍ degree of care which the nature of the property requires. In arrangements and precautions to guard against injuries occasioned by the faults and vices of animals to themselves or each other, the carrier is bound to use an amount of diligence analogous to that required of passenger carriers in the transportation of human beings. But the sufficiency of a car door to resist the struggles of animals, however unruly, it is in the power of a railroad company to secure. And its obligation in this respect is not satisfied by furnishing a reasonably strong car. The company is bound to have one absolutely and actually sufficient. It is practicable to make a car so thoroughly strong that cattle cannot break it down and fall out. For any failure to do so the carrier is responsible.

We should have no difficulty in sustaining the verdict for the plaintiff, were it not broadly and unqualifiedly stated in the instructions given that the defendant corporation was liable as a common carrier for injuries occasioned by the viciousness and unruly conduct of the cattle. So far as the sufficiency of the car was concerned, we assent to this statement. In its application to unavoidable injuries done by the cattle to themselves or each other, we regard it as incorrect.

There are two other qualifications of the liability of common carriers which may be referred to, not because of any fact appearing in the present case, but for completeness of statement and to avoid misapprehension. Where the owner of animals or goods retains the custody of them during their transit, the carrier is not as absolutely liable as he otherwise would be. *White* v. *Winnisimmet Co.* above cited. Also, where the owner of animals or other property is aware of any circumstances which render peculiar care and attention necessary to safe transportation, and which the carrier does not or is not presumed to know, he must give notice of such peculiarities in order that suitable precautions may be employed. *Wilson* v. *Hamilton,* above cited.

Perhaps the facts at the trial furnished no room for the distinction, in consequence of the omission of which we are constrained to set aside the present verdict. But of this we canno⸍

be sure, and on that narrow ground only the exceptions are sustained.

The rule of damages was accurately stated. If, as we understand from the exceptions, the defendants received the cattle knowing that they were designed to reach New York in season for a particular market day, the loss sustained by wrongful delay in transportation is the difference in market value between the time when they ought to have arrived and when they actually did arrive at the *terminus* of the road. Whether without such knowledge, in a case of unreasonable detention or delay, the rule would not be the same, we need not now decide.

*Exceptions sustained.*